Michael I. Katz (CA State Bar No. 181728)
  mkatz@mabr.com
Charles S. Barquist (CA State Bar No. 133785)
  cbarquist@mabr.com
Jared J. Braithwaite (CA State Bar No. 288642)
  jbraithwaite@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone:  (949) 202-1900
Facsimile:   (949) 453-1104

Attorneys for Plaintiff Litrinium, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| **Litrinium, Inc.**, <br><br> Plaintiff, <br><br> v. <br><br> **MACOM Technology Solutions Inc.** and **Mindspeed Technologies, S.A.S.**, and **DOES 1 through 20**, inclusive, <br><br> Defendants. | Case No. 8:19-cv-01674 <br><br> Assigned to: _____ <br><br> **Complaint for** <br><br> 1. **Violation of the Lanham Act** <br><br> 2. **Unfair Competition** <br><br> 3. **Intentional Interference with Prospective Economic Advantage** <br><br> 4. **Negligent Interference with Prospective Economic Advantage** <br><br> **(DEMAND FOR JURY TRIAL)** |

Plaintiff Litrinium, Inc., for its Complaint against Defendants MACOM Technology Solutions Inc., Mindspeed Technologies, S.A.S., and DOES 1 through 20, alleges as follows.

**NATURE OF THE ACTION**

1. Litrinium, a high performance analog and mixed-signal semiconductor company, brings this action to seek redress for MACOM's wrongful, deceptive and anti-competitive conduct in the marketplace for Transimpedance Amplifiers (TIAs) for use in optical networking components.

2. Litrinium is a startup company based in Orange County, California. Since being founded in 2016, Litrinium has designed and launched unique 28G TIA products. Over the last year, Litrinium's 28G TIA products have achieved numerous design wins over MACOM and other competitors.

3. MACOM, unable to compete fairly against Litrinium based on the strength of MACOM's own 28G TIA product offerings, resorted to anti-competitive and deceptive conduct instead.  MACOM issued a letter in March 2019, directed at prospective customers in the market for 28G TIAs, falsely stating that if those companies purchased or used Litrinium's TIA products, those customers would be subject to liability for misappropriating MACOM's trade secrets. That was an untrue statement. MACOM knew that statement to be false when made.

4. MACOM's conduct confirms its anti-competitive purpose. MACOM, after accusing Litrinium of trade secret theft in the market beginning in February 2019, refused Litrinium's offer to have a neutral technical expert review both parties' 28G TIA product designs to confirm that Litrinium's 28G TIA products were independently designed and are entirely different from MACOM's. MACOM, rather than seeking to confirm the truth, preferred to disseminate lies.

5. MACOM also engaged in anticompetitive conduct directed at Litrinium by threatening its own employees, warning them that if they sought or accepted employment with Litrinium, MACOM would sue them for misappropriation of its trade secrets.

MACOM also misled customers and potential customers by telling them that certain of its former employees who had joined Litrinium were the subject of MACOM's claims for trade secret theft, when they were not.

6. As a consequence of MACOM's wrongful, deceptive and unlawful actions, Litrinium was unable to consummate sales to numerous customers who were wrongfully intimidated and misled by MACOM. As a result of MACOM's wrongful conduct as alleged herein, Litrinium has been damaged in an amount to be proved at trial, but which is no less than $250 million in lost revenues and profits, and diminished valuation of Litrinium's stock.

## PARTIES

7. Plaintiff Litrinium, Inc. is a Delaware corporation having a principal place of business located at 1 Polaris Way, Suite 100, Aliso Viejo, California.

8. Defendant MACOM Technology Solutions Inc. is a Delaware corporation having a principal place of business at 100 Chelmsford Street, Lowell, Massachusetts. MACOM also operates design centers in Newport Beach and Santa Clara, California. Upon information and belief, those design centers assisted in developing the MACOM products referred to herein.

9. Defendant Mindspeed Technologies, S.A.S. ("Mindspeed") is a French corporation. It is wholly owned by Mindspeed Technologies, Inc., which is wholly owned by MACOM. Mindspeed is a named plaintiff in an action filed in this Court, No. 8:19-cv-220-JVS-JDE. MACOM and Mindspeed are collectively referred to herein as MACOM unless the context suggests otherwise.

10. DOES 1 through 20 are persons or entities responsible in whole or in part for the wrongdoing alleged herein. Plaintiff is informed and believes, and thereupon alleges, that each of the Doe Defendants participated in, ratified, endorsed, or was otherwise involved in the acts complained of, and that they have liability for such acts. Plaintiff will amend this Complaint if and when the identities of such persons or entities and/or the scope of their actions become known.

11. Litrinium is informed and believes, and thereupon alleges, that with the respect to the conduct and acts set forth herein each of the Defendants MACOM and Mindspeed acted at all times as the agent and alter ego of the other, and each participated in, ratified, endorsed and/or was otherwise involved in such conduct and acts such that each has liability for such acts

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over claims arising under the Lanham Act, 41 U.S.C. § 1125(a)(1), pursuant to 28 U.S.C. §§ 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over the Defendants by virtue, inter alia, of their filing of a Complaint against Litrinium and Jerome Garez in this Court. In addition, Defendants have had and continue to have contacts with the state of California and this District concerning the subject matter of this Complaint. Employees of Mindspeed had numerous and continuous communications with MACOM employees working in MACOM's Newport Beach office regarding, inter alia, the MACOM products referred to herein.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

## FACTUAL BACKGROUND

15. Litrinium was founded in 2016 by Najabat Bajwa, the former head of the high-performance analog business unit at MACOM. Litrinium focuses on developing breakthrough signal integrity solutions for next generation networks and ultra-high-speed fiber optic interconnects.

16. Litrinium is a privately held, start-up company that received funding in 2016, 2017, 2018 and most recently in February 2019. These early and frequent funding rounds reflect Litrinium's success in product development, and concomitantly, the strength of its expected sales based on this product development. The 2019 funding was

especially critical to fund Litrinium's planned ramp up of its production volumes, consistent with early indications that its 28G products, based on a unique tunable architecture, could achieve better performance than its competitors.

17. Litrinium began to market its initial product offerings in approximately June 2017 working closely with customers throughout 2018. The results of testing with customers was promising to say the least. Based on strong responses from numerous prospective customers and initial expressions of intention to purchase Litrinium's products, as of January 2019 Litrinium had projected substantial revenues for fiscal years 2019, 2020 and beyond.

18. By February 2019, however, having confirmed Litrinium's gathering strength in the market, MACOM was determined to take action to disrupt and delay Litrinium's potential success. On February 4, 2019, MACOM and Mindspeed filed an action in this Court, No. 8:19-cv-220-JVS-JDE, alleging that Litrinium and one of its employees, Jerome Garez, misappropriated trade secrets of the Plaintiffs (the "trade secret action").

19. On April 10, 2019, MACOM and Mindspeed filed their First Amended Complaint in the trade secret action. Litrinium moved to dismiss the First Amended Complaint, and on June 3, 2019, the Court granted Litrinium's motion and dismissed the First Amended Complaint.

20. On July 3, 2019, MACOM and Mindspeed filed their Second Amended Complaint in the trade secret action. On July 17, 2019, Litrinium and Garez moved to dismiss the Second Amended Complaint, which motion is set to be heard on September 23, 2019.

21. In the meantime, on June 11, 2019, the Court in the trade secret action ruled that the disclosures made by MACOM and Mindspeed of their alleged trade secrets "fail to describe the trade secrets at issue with the 'reasonable particularity' required by Section 2019.210" of the California Code of Civil Procedure. The Court found the

language used by MACOM and Mindspeed in their disclosures "so vague that it could be used to describe almost anything."

22. Despite the inability of MACOM and Mindspeed to assert a viable complaint or adequate trade secret disclosures for months on end following the filing of the trade secret action, MACOM immediately launched a campaign to injure Litrinium in the marketplace through a plethora of unlawful actions, including false and misleading advertising, business disparagement, and misrepresentations – a multi-faceted smear campaign intended to disrupt and interfere with Litrinium's prospective customer relationships and contracts.

23. Specifically, in March 2019, shortly after filing the trade secret action, MACOM issued a letter, addressed to "Dear valued customer," that it disseminated, on information and belief, to untold numbers of customers and prospective customers in California, elsewhere in the United States, and around the world. A copy of MACOM's "valued customer" letter is attached as Exhibit 1.

24. MACOM's "valued customer" letter comprises representations of alleged facts about the business and products of MACOM and Litrinium. MACOM's "valued customer" letter was intended to injure Litrinium and to promote sales of MACOM's products, and its intended audience was potential customers of MACOM and Litrinium products.

25. The recipients of MACOM's "valued customer" letter have no substantial interest in the trade secret action because – contrary to MACOM's false insinuations – customers of the products at issue in the trade secret action have no risk of liability as a result of their purchase or use of Litrinium products. Recipients of MACOM's "valued customer" letter have no knowledge of the alleged trade secrets at issue in the trade secret action.

26. MACOM's letter contains a number of false and/or misleading claims, including false and misleading statements not related to MACOM's complaint in the trade secret action, and include the following:

      a.    MACOM's letter misleadingly suggests that two Litrinium employees who are not named in any of MACOM's pleadings, Angus Lai and Sebastien Douyere, are being "investigated."

      b.    MACOM's letter misleadingly suggests that Mr. Lai and Mr. Douyere are the subject of "the legal claims asserted by MACOM," when neither is mentioned in any MACOM pleading. Mr. Lai is the head of marketing for Litrinium and in that role regularly interfaces with customers. MACOM's false assertion that Mr. Lai's conduct was the subject of the legal claims asserted by MACOM was intended to and did disrupt and interfere with Litrinium's customer engagements.

      c.    MACOM's letter misleadingly suggests that the technology allegedly misappropriated by Litrinium included "28G Burst Mode TIA" products, when in fact Litrinium does not have and does not offer such a product.

27.    MACOM's "valued customer" letter makes the following request of its recipients: "If you are approached by anyone affiliated with Litrinium, we request that you promptly notify us and share whatever non-confidential product and marketing information you receive from Litrinium." The letter further states MACOM is "committed to working with our customers to ensure that they are not ensnared in legal actions that could jeopardize them because of intellectual property theft." The letter concludes with a threat that MACOM will take action "against parties who knowingly use and incorporate MACOM's proprietary and confidential information in their products, or aid and abet others who do so."

28.    The "valued customer" letter is false and misleading in suggesting that customers who might purchase products from Litrinium could be subject to legal action by MACOM. This is false and misleading because even if MACOM's claims of trade secret misappropriation by Litrinium and Garez were valid – and they are not – a

customer of the Litrinium products at issue would not itself risk liability for trade secret misappropriation.

29. The "valued customer" letter is false and misleading in suggesting MACOM owns all of the intellectual property rights embodied in its products by suggesting that customers of *MACOM* products will "not [be] ensnared in legal actions that could jeopardize them because of intellectual property theft." Upon information and belief, MACOM has no basis to assure customers of its TIA products that they run no risk of infringement claims by third parties.

30. MACOM's campaign to injure Litrinium in the marketplace also utilized MACOM employees who have made repeated false and misleading claims in communications with investors, customers and prospective customers of Litrinium, including the following:

    a. Preet Virk, then SVP and Manager of MACOM's Networking Business Unit, asserted to Angus Lai and a Litrinium customer that Litrinium was "stealing our people."

    b. Preet Virk stated to Angus Lai, when Mr. Lai decided to leave MACOM, that MACOM would file a lawsuit for the purpose of slowing Litrinium's progress and to scare off investors.

    c. Gary Shah, VP Business Line Manager at MACOM, stated to a customer that MACOM intentionally waited to file the lawsuit until Litrinium had achieved enough success that it "had some money."

    d. Jimmy Lin, MACOM's Sales Manager, stated to several customers that if they were to buy Litrinium products that they would have legal issues.

    e. Donghyun Thomas Hwang, MACOM's SVP for Global Sales, stated to a customer that MACOM is suing Litrinium because Litrinium has the same pin-out as MACOM and is selling its product at half the price. Upon information and belief, Hwang has made substantially

similar representations to additional customers. Both statements regarding MACOM and Litrinium products are false.

31. MACOM has also issued threats to its own employees, suggesting that MACOM would sue any employee who took a job with Litrinium. These threats were wrongful because, among other reasons, MACOM could have no grounds to allege misappropriation before an employee left the company, and the public policy of California is to promote and support the ability of employees to change employers freely.

32. As a result of MACOM's threats and false and misleading claims and statements directed to Litrinium's customers and prospective customers, Litrinium was unable to consummate sales to numerous customers who were intimidated and misled by MACOM. Litrinium has lost and will continue to lose substantial sales revenues and profits, and has suffered and will continue to suffer a diminution in value of the company as a result of MACOM's actions.

## FIRST CLAIM FOR RELIEF
## FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT

33. Litrinium realleges the foregoing paragraphs as if fully set forth herein.

34. The false or misleading descriptions of alleged fact and false or misleading representations of fact alleged above were made by MACOM in interstate commerce in connection with and in commercial advertising or promotion of MACOM goods or services.

35. These false and misleading representations include, without limitation:
   a. The false and misleading suggestion that customers who would purchase products from Litrinium could be subject to legal action by MACOM. Even if MACOM's claims of trade secret misappropriation by Litrinium and Garez were valid – and they are not – a customer of the Litrinium products at issue would not itself risk liability for trade secret misappropriation.

    b. The false and misleading suggestion that MACOM owns all of the intellectual property rights embodied in its products and that customers of MACOM products will "not [be] ensnared in legal actions that could jeopardize them because of intellectual property theft." In fact, upon information and belief MACOM has no basis to assure that customers of its 28G transimpedance amplifier products face no risk of infringement claims by third parties.

    c. The false and misleading statement that Litrinium has the same pin-out as MACOM and is selling its product at half the price.

36. The false or misleading descriptions and representations of alleged fact alleged above deceived or were likely to deceive MACOM's intended audience.

37. MACOM knows that its representations and descriptions of alleged fact are false or misleading. In fact, immediately after the trade secret action was filed Litrinium offered to have its products inspected and evaluated by a neutral expert to establish that MACOM's assertions were unfounded. MACOM refused Litrinium's offer, however, because it knew that its claims had no merit.

38. MACOM's false or misleading representations and descriptions of alleged fact were made in bad faith and with malice or reckless indifference to the interests of Litrinium, its customers and potential customers. MACOM's bad faith conduct, and its objective of gutting a competitive start-up during its product launch, as confirmed by statements made by MACOM's senior officers and managers, are among the reasons that this is an exceptional case.

39. The false or misleading descriptions and representations of alleged fact alleged above were material in that they were likely to deceive customers and potential customers of MACOM and Litrinium products, and to influence purchasing decisions of the recipients.

40. The false or misleading descriptions and representations of alleged fact alleged above were intended by MACOM to cause and did in fact cause actual substantial injury to Litrinium.

41. MACOM and its employees continue to make and disseminate the false or misleading representations and descriptions of alleged fact set forth herein, and will continue to do so unless enjoined by this Court.

42. By reason of the foregoing, MACOM is liable under Section 43(a) of the Lanham Act, 15 U.SC. § 1125(a).

## SECOND CLAIM FOR RELIEF
## UNFAIR COMPETITION—VIOLATION OF BUSINESS & PROFESSIONS CODE

43. Litrinium realleges the foregoing paragraphs as if fully set forth herein.

44. The false or misleading descriptions of alleged fact and false or misleading representations of fact alleged above were made by MACOM in connection with and in commercial advertising or promotion of MACOM goods or services.

45. The false or misleading descriptions and representations of alleged fact alleged above were intended to deceive and did deceive or were likely to deceive MACOM's intended audience.

46. MACOM knows that its representations and descriptions of alleged fact are false or misleading.

47. MACOM's false or misleading representations and descriptions of alleged fact were made in bad faith and with malice or reckless indifference to the interests of Litrinium and customers and potential customers.

48. The false or misleading descriptions and representations of alleged fact alleged above were intended by MACOM to cause and did in fact cause actual substantial injury to Litrinium.

49. By reason of the foregoing, MACOM has engaged in unlawful, unfair or fraudulent business acts or practices, and is liable for unfair competition under Section 17200 of the California Business & Professions Code.

## THIRD CLAIM FOR RELIEF
## INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

50. Litrinium realleges the foregoing paragraphs as if fully set forth herein.

51. On information and belief, MACOM disseminated the "valued customer" letter to numerous customers and prospective customers of Litrinium, including those in California.

52. The "valued customer" letter contained numerous false and/or misleading statements.

53. In addition, as alleged above, many MACOM employees made repeated false and misleading claims in communications with investors, customers and prospective customers of Litrinium.

54. MACOM knew of Litrinium's business relations with the customers to which it disseminated the "valued customer" letter and made other false and misleading claims.

55. Litrinium's business relations with the recipients of MACOM's "valued customer" letter and of the false and misleading statements of MACOM employees would probably have resulted in substantial economic benefit to Litrinium.

56. For the reasons discussed above, MACOM knew, or should have known, that the "valued customer" letter and the statements of MACOM employees alleged herein contained numerous false and/or misleading statements.

57. By making false and misleading statements in the "valued customer" letter and disseminating the letter to Litrinium's customers and prospective customers, and by making false and misleading oral statements to such customers and prospective customers, MACOM intended to and did intentionally interfere with Litrinium's business

relations with its customers and prospective customers, including Litrinium's ability to sell its products to its customers.

58. By intentionally using wrongful means as alleged above, MACOM acted with the purpose of harming Litrinium and its business relations with third-parties, including with Litrinium's customers and prospective customers.

59. The intentional actions of MACOM to interfere with Litrinium's business relations caused Litrinium's customers and prospective customers not to purchase products that they would otherwise have purchased.

60. By reason of the foregoing, MACOM committed the tort of intentional interference with prospective economic relations.

61. As a result, Litrinium has sustained, and continues to sustain substantial monetary damages, including lost revenues, lost profits and diminution in the value of Litrinium in an amount to be proven at trial but no less than $250 million.

## FOURTH CLAIM FOR RELIEF
## NEGLIGENT INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE

62. Litrinium realleges the foregoing paragraphs as if fully set forth herein.

63. On information and belief, MACOM disseminated the "valued customer" letter to numerous customers and prospective customers of Litrinium.

64. The "valued customer" letter contained numerous false and/or misleading statements.

65. In addition, as alleged above, many MACOM employees made repeated false and misleading claims in communications with investors, customers and prospective customers of Litrinium.

66. MACOM knew or should have known of Litrinium's business relations with the customers to which it disseminated the "valued customer" letter and made other false and misleading claims.

67. Litrinium's business relations with the recipients of MACOM's "valued customer" letter and of the false and misleading statements of MACOM employees would probably have resulted in substantial economic benefit to Litrinium.

68. For the reasons discussed above, MACOM knew, or should have known, that the "valued customer" letter and the statements of MACOM employees alleged herein contained numerous false and/or misleading statements.

69. By making false and misleading statements in the "valued customer" letter and disseminating the letter to Litrinium's customers and prospective customers, and by making false and misleading oral statements to such customers and prospective customers, MACOM knew or should have known that its dissemination of the "valued customer" letter and the false and misleading oral statements would interfere with and disrupt Litrinium's business relations with its customers and prospective customers, including Litrinium's ability to sell its products to its customers.

70. By using wrongful means as alleged above, MACOM failed to act with reasonable care.

71. The actions of MACOM to interfere with Litrinium's business relations as alleged herein caused Litrinium's customers and prospective customers not to purchase products that they would otherwise have purchased.

72. By reason of the foregoing, MACOM committed the tort of negligent interference with prospective economic relations.

73. As a result, Litrinium has sustained, and continues to sustain substantial monetary damages, including lost revenues, lost profits and diminution in the value of Litrinium in an amount to be proven at trial but no less than $250 million.

## PRAYER FOR RELIEF

WHEREFORE, Litrinium prays for judgment against Defendants MACOM and Mindspeed as follows:

1. For compensatory damages in the sum of at least Two Hundred Fifty Million Dollars, or according to proof at trial;

2. For exemplary or punitive damages in an amount according to proof at trial;

3. For injunctive relief enjoining MACOM and Mindspeed from making or disseminating further false or misleading representations or descriptions of alleged fact with respect to MACOM products, Litrinium, Litrinium employees and Litrinium products;

4. For treble damages because this is an exceptional case;

5. For Litrinium's reasonable attorney's fees and expenses incurred in this action;

6. For costs incurred in this action; and

7. For such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Litrinium hereby demands a jury trial on all issues so triable.

Dated: September 3, 2019        MASCHOFF BRENNAN

By: */s/ Michael I. Katz*
Michael I. Katz
Charles S. Barquist
Jared J. Braithwaite

Attorneys for Plaintiff Litrinium, Inc.