JS - 6

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS]** Order Regarding Motion to Strike

Defendant MACOM Technology Solutions, Inc. ("MACOM") moves to strike or in the alternative, to dismiss, Plaintiff Litrinium, Inc.'s ("Litrinium") first amended complaint ("FAC"). Mot., ECF No. 18. Litrinium opposed the motion. Opp'n., ECF No. 19. MACOM replied. Reply, ECF No. 20.

For the following reasons, the Court **GRANTS** the motion and **STRIKES** the FAC with prejudice.

## I. BACKGROUND

Litrinium brings the following claims against MACOM: (1) violation of the Lanham Act; (2) Unfair Competition; (3) intentional interference with prospective economic advantage; and (4) negligent interference with prospective economic advantage. FAC at ¶¶ 35-75.

The FAC alleges the following. On February 4, 2019, MACOM filed an action against Litrinium (Case No.: 8:19-cv-220-JVE-JDE), alleging that Litrinium and one of its employees, Jerome Garez ("Garez"), misappropriated their trade secrets (the "Trade Secret Action"). Id. at ¶ 17. After Litrinium prevailed on two motions to dismiss, MACOM voluntarily dismissed its claims. Id. at ¶¶ 18-20. The FAC alleges that despite failing to assert a viable complaint or adequate trade secret disclosure in the Trade Secret Action, MACOM immediately launched a campaign intended to injure Litrinium in the market place through "false and misleading advertising, business disparagement, and misrepresentations." Id. at ¶ 22. Specifically, in March 2019, MACOM issued a letter

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

addressed to "Dear valued customer" that was disseminated, on information and belief, to customers and prospective customers (the "Letter").[1] Id. at ¶ 23.

Litrinium contends that the Letter contained the following false and/or misleading claims not related to the Trade Secret Action: (1) misleadingly suggests that two Litrinium employees, Angus Lai ("Lai") and Sebastien Douyere ("Douyere"), who were not named in any of MACOM's pleadings, were being investigated; (2) misleadingly suggests that Lai and Douyere are the subject of legal claims asserted by MACOM when they were not; and (3) misleadingly suggests that technology allegedly misappropriated by Litrinium included "28G Burt Mode TIA" products, when Litrinium does not have or offer such a product. Id. at ¶ 26.

The Letter is also allegedly false and misleading in that it suggests that customers who might purchase products from Litrinium could be subject to legal action by MACOM when they could not be because they were not aware of the substance of any alleged trade secrets. Id. at ¶ 30. Specifically, the FAC refers to the following statement:

> In light of your company's business relationship with MACOM, we suspect that Litrinium may approach you. If you are approached by anyone affiliated with Litrinium, we request that you promptly notify us and share whatever non-confidential product and marketing information you receive from Litrinium. We believe it is critical that MACOM and its customers operate with the utmost transparency in respecting and enforcing each other's intellectual property rights. We are committed to working with our customers to ensure that they are not ensnared in legal actions that could jeopardize them because of intellectual property theft. That said, MACOM is committed to protecting its intellectual property rights, including those rights as against parties who knowingly use and

---

[1] Litrinium acknowledges that although the FAC claims to have attached the letter as Exhibit 1 (FAC at ¶ 23) in error it did not attach the exhibit. Opp'n., 1. However, the exhibit was attached to the initial complaint (ECF No. 1-1) and the parties do not dispute that this letter is incorporated in the FAC. Thus, the Court may rely on the letter in determining the outcome of the instant Motion.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

incorporate MACOM's proprietary and confidential
information in their products, or aid and abet others who do so.

Id. at ¶ 29; Letter, 1, ECF No. 1-1.

In addition to the Letter, the FAC alleges that MACOM made the following false and misleading claims through its employees' communications with investors, customers, and prospective customers: (1) Preet Virk ("Virk"), SVP and Manager of MACOM's Networking Unit, told Lai "and a Litrinium customer" that Litrnium was "stealing our people"; (2) Virk told Lai when he decided to leave MACOM that "MACOM would file a lawsuit for the purpose of slowing Litrinium's progress and to scare off investors"; (3) Gary Shah ("Shah"), VP Business Line Manager at MACOM, told "a customer" that "MACOM intentionally waited to file the lawsuit until Litrinium had achieved enough success that it 'had some money'"; (4) Jimmy Lin, MACOM's Sales Manager, told several customers that if they were to buy Litrinium products they would have "legal issues"; and (5) Donghyun Thomas Hwang ("Hwang"), MACOM's SVP for Global Sales, told a customer that MACOM is suing Litrinium because it has the same pin-out as MACOM and is selling the product at half the price. FAC at ¶ 32. The FAC also alleges that MACOM has threatened its own employees by suggesting that if they took a job with Litrinium, MACOM would sue them. Id. at ¶ 33. As a result of these "threats and false and misleading claims and statements" directed at Litrinium's customers and prospective customers, Litrinium was unable to consummate sales to numerous customers. Id. at ¶ 34.

## II.  LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(f)

Under Rule 12(f), a party may move to strike any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). The grounds for a motion to strike must appear on the face of the pleading under attack, or from matters of which the Court may take judicial notice. SEC v. Sands, 902 F. Supp. 1149, 1165 (C.D. Cal. 1995). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1674 JVS(JDEx)                          Date  4/27/20

Title  Litrinium, Inc. v. MACOM Technology Solutions Inc. et al

(9th Cir. 1993), rev'd on other grounds by Fogerty v. Fantasy, Inc., 510 U.S. 517 (1994).

"As a general proposition, motions to strike are regarded with disfavor because [they] are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." Sands, 902 F. Supp. at 1165-66 (alteration in original) (internal quotation marks omitted). Therefore, courts frequently require the moving party to demonstrate prejudice "before granting the requested relief, and 'ultimately whether to grant a motion to strike falls on the sound discretion of the district court.'" Greenwich Ins. Co. v. Rodgers, 729 F. Supp. 2d 1158, 1162 (C.D. Cal. 2010) (quoting Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002)).

**B.  Fed. R. Civ. P. 12(b)(6)**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

**III. DISCUSSION**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

### A. California's Anti-SLAPP Statute

California's anti-SLAPP statute allows for pre-trial dismissal of "SLAPP" suits ("Strategic Lawsuits against Public Participation"). Cal. Civ. Proc. Code § 425.16. The statute aims to identify, early in the litigation process, "meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 839 (9th Cir. 2001); see also Wilcox v. Super. Ct., 27 Cal.App.4th 809, 816 (1994).

To succeed on an anti-SLAPP motion, a defendant must "make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution." Batzel v. Smith, 333 F.3d 1018, 1024 (9th Cir. 2003). "The burden then shifts to the plaintiff to establish a reasonable probability that the plaintiff will prevail on his or her defamation claim." Id. In other words, "the plaintiff must demonstrate that 'the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment if the evidence submitted by plaintiff is credited.'" Metabolife, 264 F.3d at 840 (quoting Wilcox, 27 Cal. App.4th at 823). "This burden is much like that used in determining a motion for nonsuit or directed verdict, which mandates dismissal when no reasonable jury could find for the plaintiff." Id. at 840 (internal quotation marks omitted). "Thus, a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or when no evidence of sufficient substantiality exists to support a judgment for the plaintiff." Id. (internal quotation marks omitted).

Where an anti-SLAPP motion is brought on the grounds that the plaintiff's claim is legally deficient, the Court should adjudicate the motion under the standards for a Rule 12(b)(6) motion to dismiss. See Lauter v. Anoufrieva, 642 F. Supp. 2d 1060, 1109 (C.D. Cal. 2009); In re Bah, 321 B.R. 41, 45 n.6 (B.A.P. 9th Cir. 2005). "In other words, the court must read the complaint broadly, take all well-pleaded allegations as true, and dismiss with leave to amend." In re Bah, 321 B.R. at 45 n.6.

"In any action subject to subdivision (b) [of California's Anti-SLAPP statute], a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Civ. Proc. Code § 425.16(c).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

     1.    Protected Communications

     Protected activity includes: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" or (2) "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e). A written or oral statement made "in connection with an issue under consideration or review by a judicial body" includes statements made in anticipation of litigation, even before the lawsuit is filed. Briggs v. Eden Council for Hope & Opportunity, 19 Cal.4th 1106, 1115 (1999); Neville v. Chudacoff, 160 Cal.App.4th 1255, 1268 (2008) (finding that letter sent four months prior to filing lawsuit that described misconduct giving rise to lawsuit was "protected activity"). The statements must have at least some relationship with an issue under review in the proceeding; "statements that bear no relationship to or have nothing to do with the claims under consideration in the litigation do not meet that standard." Id. at 1264 (citing Paul v. Friedman, 95 Cal. App. 4th 853, 866 (2002)) (finding that intrusive investigation into opponent's personal life during arbitration proceeding and disclosure of personal details to opponent's clients was not protected activity because it bore no relation to the securities fraud at issue in the arbitration); see also Rand Res., LLC v. City of Carson, 6 Cal. 5th 610, 620 (2019) ("[I]t is insufficient to assert that the acts alleged were in connection with an official proceeding. . . . [T]here must be a connection with an issue under review in that proceeding." (internal citations and quotations omitted)). "By definition, irrelevant matters have no tendency in reason to prove or disprove any disputed fact of consequence to the determination of a matter, and are specifically excluded from consideration." Paul, 95 Cal. App. 4th at 868.[2]

     Litrinium alleges in the FAC that false statements and claims made in the Letter and five additional statements attributed by MACOM employees are the basis for its Lanham Act, Unfair Competition, intentional interference with prospective economic advantage, and negligent interference with prospective economic advantage claims. FAC

---

[2]At oral argument, Litrinium referred to this standard as requiring that the fact be "more likely than not" to prove or disprove a factual assertion, but the Court notes that the cases cited by Litrinium do not use this language.

JS - 6
# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
|---|---|---|---|

| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al |
|---|---|

at ¶¶ 35-75. As to the statements made by MACOM employees, Litrinium does not address the employee statements in its opposition instead stating that the "claims are focused only on MACOM's false statements in its Customer Letter." Opp'n, 4, 9. MACOM argues that the Letter and the employee statements were made in connection with the Trade Secret Action which is an "issue under consideration or review" by the Court. Mot., 10.

Litrinium argues that each of MACOM's allegedly "false statements" in the Letter was irrelevant or "have no tendency in reason to prove or disprove any disputed fact of consequence to the determination of" the Trade Secret Action. See Opp'n., 8 (citing to Paul, 95 Cal. App. 4th at 868). Litrinium points to (1) the claims in the Letter as to employees Lai and Douyere, (2) the claims as to the 28G Burst Mode TIA, and (3) the statements "that customers who purchased Litrinium's products would be the subject of future lawsuits." See Opp'n., 9-12. However, this argument is farfetched as Litrinium itself produced the Letter in the Trade Secret Action in support of its motion to dismiss and its motion for attorney's fees. See generally, Trade Secret Action, ECF No., 74, 57-1. Furthermore, as will be discussed in more detail infra, Litrinium's claims of what was said in the Letter are exaggerated.

Courts have found that letters sent to customers notifying them of pending litigation to be a writing made in connection with an issue under review by a judicial body. For example, in Neville v. Chudacoff, the court found in a breach of contract and misappropriation of trade secrets action where an employee cross-claimed for defamation, that a letter drafted by the employer several months before litigation was commenced was a writing in connection with issues in the anticipated lawsuit even though the letter suggested to customers that they should not do business with the former employee in order to avoid potential involvement in ensuing litigation "as a material witness, or otherwise." 160 Cal. App. 4th 1255, 1259, 1268 (2008). Similarly, in Contemporary Servs. Corp. v. Staff Pro Inc., the court found that an email describing the "parties' contentions and court rulings" directed at nine actual or potential customers "who had some involvement" in the parties' litigation by virtue of being potential witnesses constituted a writing that arose from protected activity. 152 Cal. App. 4th 1043, 1050, 1054-55, 61 Cal. Rptr. 3d 434, 444 (2007).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

A review of the Letter at issue here reveals that it is an attempt to update MACOM's customers on pending litigation and serves a similar purpose to the email in Contemporary. Furthermore, as will be discussed infra, the Letter does not claim that Lai or Douyere were the subject of a lawsuit, nor does the Letter make any false allegations as to the 28G Burst Mode TIA. Thus these arguments by Litrinium lack merit. At most, Litrinium can argue that the Letter makes suggestions that a customer could be "ensnared" in legal actions, but at no point does the Letter claim that customers who buy Litrinium products would be sued. These "suggestions" are reminiscent to that in Neville wherein the Court still considered the writing to have been in connection with an issue under review by a judicial body.

As to the statements made by MACOM employees, these statements similarly relate to issues before the Court. The five statements contain claims pertaining to the Trade Secret Action. For example, whether Litrinium was "stealing [MACOM's] people," the timing, purpose, and reasons behind MACOM's lawsuit. See FAC ¶ 32. Even the alleged statement by Lin to "several customers that if they were to buy Litrinium products that they would have legal issues," is similar to that in the email in Neville given that customers who had bought Litrinium products that were the subject of the Trade Secret Action could reasonably have been expected to have been witnesses in the action. Id. The Court notes that Litrinium does not address the employee statements in its opposition instead stating that the "claims are focused only on MACOM's false statements in its Customer Letter." Opp'n., 4, 9.

Litrinium argues that even if MACOM's statements were connected to the Trade Secret Action, they fall under the Commercial Speech Exemption.[3] Opp'n., 13. Under California Code of Civil Procedure section 425.17(c), the anti-SLAPP statute "does not apply to any cause of action brought against a person primarily **engaged** in the business of selling or leasing goods or services ... arising from any statement or conduct by that person if:

> (1) The statement or conduct consists of representations of fact **about** that person's or a business competitor's business

---

[3] It is Litrinium's burden to demonstrate that an anti-SLAPP exemption applies. See Simpson Strong-Tie Co. v. Gore, 2010 WL 1948283, at *8 (Cal. May 17, 2010).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

> operations, goods, or services, that is made for the **purpose** of obtaining approval for, promoting, or securing sales or leases of, or commercial transactions in, the person's goods or services, or the statement or conduct was made in the course of delivering the person's goods or services [and]
>
> (2) The **intended** audience is an actual or potential buyer or customer, or a person likely to repeat the statement to, or otherwise influence, an actual or potential buyer or customer. . . .

(emphasis added). Without "adopt[ing] a per se rule excluding all competitor's statements from anti-SLAPP protection," California courts hold that "in most cases a competitor's statements regarding its competition would not fall within section 425.16, subdivision (e)(4)." See, e.g., Integrated Healthcare Holdings, Inc. v. Fitzgibbons, 140 Cal. App. 4th 515, 526 (2006); see also Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) (holding that the statements of one company regarding a competitor company do not satisfy the "issue of public interest" requirement of the anti-SLAPP statute).

The parties do not appear to dispute that the MACOM is engaged in the business of selling goods or that the intended audience of the Letter was "actual or potential" customers. However, the parties do dispute the purpose of the Letter and whether it consists of representations about MACOM's products or Litrinium's products. Litrinium argues that MACOM's Letter is like the email at issue in E.D.C. Techs., Inc. v. Seidel, where the Court found that the email was sent for the purpose of promoting its goods and services even though it also described factual allegations in the relevant lawsuit. 225 F. Supp. 3d 1058, 1066 (N.D. Cal. 2016). However, the E.D.C. Techs court made that determination because of the "inherently commercial elements" of the emails including that they address recipients as "valued EDC customer[s]," state that recipients could make their own judgment about who to believe and with whom to do business, state that EDC will "continue to provide the latest in hot water technology and the best possible service," and enclosed a copy of EDC's latest sales literature. Id. The only similarity between the Letter and the email in E.D.C. Techs. is that they are addressed to valued customers. Unlike in E.D.C. Techs. the Letter appears to have been intended to inform

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1674 JVS(JDEx)                    Date   4/27/20

Title   Litrinium, Inc. v. MACOM Technology Solutions Inc. et al

MACOM's customers about pending litigation in the Trade Secret Action and its protection of its intellectual property. Litrinium has thus failed to meet its burden of establishing that the Commercial Speech Exemption applies.

Accordingly, such communications are protected activity within the meaning of the anti-SLAPP statute.

      2.    <u>Probability of Prevailing</u>

Since MACOM has met its burden as to the whether the communications are protected activity under the anti-SLAPP statute, the burden now shifts to Litrinium to establish "a reasonable probability" that it will prevail in its claims. See <u>Batzel</u>, 333 F.3d at 1024.

      (A)    *<u>Noerr-Pennington</u> Doctrine and the California Litigation Privilege*

MACOM argues that all of Litrinium's claims are barred by the <u>Noerr-Pennington</u> doctrine and the California litigation privilege. Mot., 14.

The <u>Noerr-Pennington</u> doctrine provides absolute immunity for statutory liability for conduct when petitioning the government for redress. <u>Sosa v. DIRECTV, Inc.</u>, 437 F.3d 923, 929 (9th Cir. 2006). Immunity under the <u>Noerr-Pennington</u> doctrine includes communications made to the court during the course of a lawsuit. Such communications include "[a] complaint, an answer, a counterclaim and other assorted documents and pleadings, in which plaintiffs or defendants make representations and present arguments to support their request that the court do or not do something." <u>Id.</u> at 933 (citation omitted). "Conduct incidental to a lawsuit, including a pre-suit demand letter, [also] falls within the protection of the <u>Noerr-Pennington</u> doctrine." <u>Theme Promotions, Inc. v. News Am. Mktg. FSI</u>, 546 F.3d 991, 1007 (9th Cir. 2008).

The Ninth Circuit has recognized an exception to the <u>Noerr-Pennington</u> doctrine, however. <u>Noerr-Pennington</u> immunity does not apply to conduct that, although "ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere" with the defendant's business

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

practices. Sosa, 437 F.3d at 938 (citation omitted). As a result, "[s]ham petitions don't fall within the protection of the doctrine." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183–84 (9th Cir. 2005). The Ninth Circuit has identified three circumstances when the so-called sham litigation exception applies:

> first, where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful; second, where the conduct involves a series of lawsuits brought pursuant to a policy of starting legal proceedings without regard to the merits and for an unlawful purpose; and third, if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.

Sosa, 437 F.3d at 938 (internal quotation marks and citations omitted).

"The litigation privilege ... provides that a 'publication or broadcast' made as part of a 'judicial proceeding' is privileged." Action Apartment Assoc., Inc. v. City of Santa Monica, 41 Cal.4th 1232, 1241 (2007). "This privilege is absolute in nature, applying 'to *all* publications, irrespective of their maliciousness.'" Id. (quoting Silberg v. Anderson, 50 Cal.3d 205 (1990) (italics in original)). "'The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action.'" Id. (quoting Silberg, 50 Cal.3d at 212). "The privilege 'is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards.'" Id. (quoting Rusheen v. Cohen, 37 Cal.4th 1048, 1057 (2006)). "In order to achieve this purpose of curtailing derivative lawsuits, [California courts] have given the litigation privilege a broad interpretation." Id. The litigation privilege "bars all tort causes of action except a claim of malicious prosecution." Flatley v. Mauro, 39 Cal.4th 299, 322 (2006) (citing Hagberg v. Cal. Fed. Bank, 32 Cal.4th 350, 360 (2004)). "To be protected by the litigation privilege, a communication must be 'in

Case 8:19-cv-01674-JVS-JDE Document 29 Filed 04/27/20 Page 12 of 17 Page ID #:209

JS - 6
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1674 JVS(JDEx)                                    Date   4/27/20

Title      Litrinium, Inc. v. MACOM Technology Solutions Inc. et al

furtherance of the objects of the litigation.'"  Action Apartment, 41 Cal.4th at 1251 (quoting Silberg, 50 Cal.3d at 219).

MACOM alleges that the actions challenged in the FAC are immune from liability because they are relevant to the Trade Secret Action given that they are mainly based on the allegations in the Letter which was sent to keep customers "abreast of a legal proceeding." Mot., 15.  As to the additional employee statements, MACOM argues that the statements either specifically reference or relate to the Trade Secret Action.  Id.

The sum of Litrinium's arguments is that "false statements" made in the Letter were unrelated to the Trade Secret Action and thus cannot be barred by either the Noerr-Pennington doctrine or the California litigation privilege.  Opp'n., 20.  Specifically, Litrinium argues that the Letter made litigation threats to purchasers of Litrinium's products when it would be impossible for such customers to be subject to litigation because they did not know what the trade secrets were. Id.  They further argue that the Letter made claims that Lai, Douyere, and other employees were subject to lawsuits and investigations when they were not, and that MACOM implicated Litrinium's 28G Burst Mode TIA products in the Letter even though they were not subject to the Trade Secret Action.  Opp'n., 10-13, 21.  Litrinium makes no arguments as to the employee statements.  The Court takes each of these arguments in turn.

With regards to Litrinium's argument that the Letter makes false "statements that customers who purchased Litrinium's products would be the subject of future lawsuits, and that customers of MACOM products would be free from any third-party intellectual property claims," the Court first notes that the Letter itself does not claim that Litrinium customers would be subject to future lawsuits.  See Opp'n., 11.  Instead the Letter states in relevant part:

> In light of your company's business relationship with MACOM, we suspect that Litrinium may approach you. If you are approached by anyone affiliated with Litrinium, we request that you promptly notify us and share whatever non-confidential product and marketing

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

> information you receive from Litrinium. We believe it is critical that MACOM and its customers operate with the utmost transparency in respecting and enforcing each other's intellectual property rights. We are committed to working with our customers to ensure that they are not ensnared in legal actions that could jeopardize them because of intellectual property theft. That said, MACOM is committed to protecting its intellectual property rights, including those rights as against parties who knowingly use and incorporate MACOM's proprietary and confidential information in their products, or aid and abet others who do so.

Letter, 1. Litrinium contends these are "threats about future lawsuits" and have no basis because the customers had no "knowledge" of MACOM's trade secrets. Opp'n., 10. MACOM argues that the applicable case law supports liability for third parties who market products that incorporate misappropriated trade secrets. Mot., 16. Indeed in X6D, Ltd. v. Li-Tek Corps. Co., the court, relying in part on an Illinois case[4] after determining that the California Trade Secrets Act is identical in relevant part to the Illinois Trade Secrets Act, denied dismissal of an action against a distributor of an allegedly infringing product even though they did not manufacture the product. 2010 WL 11512197, at *3 (C.D. Cal. Oct. 26, 2010). In response, Litrinium attempts to distinguish the California Uniform Trade Secrets Act (Cal Civ. Code § 3426.1(b))[5] and the Illinois Trade Secrets Act (765 Ill. Comp. Stat. Ann. 1065/2).[6] O'ppn., 12. Litrinium is correct that in X6D, the court

---

[4] Cognis Corp. v. Chemcentral Corp., 430 F. Supp. 2d 806, 811–13 (N.D. Ill. 2006).

[5] "'Misappropriation' means: . . . (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: . . . (B) At the time of disclosure or use, knew or had reason to know **that his or her knowledge** of the trade secret was." Cal. Civ. Code § 3426.1 (emphasis added).

[6] "'Misappropriation' means: . . . (2) disclosure or use of a trade secret of a person without express or implied consent by another person who: . . . (B) at the time of disclosure or use, knew or had reason to know **that knowledge** of the trade secret was." 765 Ill. Comp. Stat. Ann. 1065/2 (emphasis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

clarified that in order to be liable for misappropriation of trade secrets by "use" where it is not alleged that the defendant "personally used improper means to acquire the trade secret", it must be shown that the defendant had knowledge that the trade secret was derived through improper means. X6D, 2010 WL 11512197, at *3 (citing Cal. Civ. Code § 3426.1(b)(2)(B)). Thus, MACOM's customers would have needed knowledge that the trade secret was improperly acquired to be liable. However, even if knowledge is required it remains true that there is a legal basis upon which MACOM could have sought redress against customers of Litrinium products if they "used" the products while having "knowledge" of its illegitimate source.

Litrinium also appears to argue that the customers did not have a "substantial interest" in the outcome of the Trade Secret Action. Opp'n., 20. However, unlike in E.D.C. Techs., there is no evidence or allegations here that the letter was sent broadly to parties who may not have to face liability or act as witnesses. 225 F. Supp. 3d at 1068 ("EDC's emails addressed current, former, and potential future customers, as well as contractors and developers."). Litrinium also fails to address MACOM's arguments that its customers could be impacted by the on-going litigation with Litrinium because of the injunctive relief sought by MACOM and whether its customers could be witnesses. Accordingly, these arguments fail.

As to the statements in the Letter pertaining to Lai and Douyere, Litrinium argues that "MACOM falsely stated it had a lawsuit against certain persons when it did not." Opp'n., 10. However, the statements in the Letter that pertain to Lai and Douyere do not state that Lai and Douyere were the subjects of a lawsuit. The Letter only stated that these individuals had been recruited by MACOM and that MACOM was "continuing to investigate the activities of all former MACOM employees who joined, or will join, Litrinium." Letter, 2. An investigation is not a lawsuit. Thus, Litrinium's argument as to these statements lack merit in that the Letter does not make such statements. In fact, MACOM is clear at the beginning of the letter that it had filed suit only against Litrinium and Garez. See Letter, 1.

added).

Case 8:19-cv-01674-JVS-JDE Document 29 Filed 04/27/20 Page 15 of 17 Page ID #:212

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 19-1674 JVS(JDEx) Date 4/27/20

Title Litrinium, Inc. v. MACOM Technology Solutions Inc. et al

The only other location Lai and Douyere are mentioned in the Letter is in the fifth paragraph that states in part:

> Importantly, for the legal claims asserted by MACOM, Messrs. Garez, Lai and Douyere were entrusted with proprietary and confidential technical and marketing data regarding MACOM's products and strategies. The technology at-issue in the lawsuit concerns TIAs, including PAM-4 TIA, 28G Burst Mode TIA, 28G Gen1 TIA, 10G Gen2 TIA, 25G APD TIA, single and quad versions and 28G PIN TIA single and quad versions.

Id. This paragraph does not indicate that Lai and Douyere were Defendants in the Trade Secret Action.

Litrinium's argument that the Letter falsely stated to customers that Litrinium's "28G Burst Mode TIA" products were subject to dispute is premised on the fact that the Trade Secret Action's second amended complaint did not include "Burst Mode" TIAs. Opp'n., 3, 10, 14. The Court finds this argument unconvincing since Litrinium alleged in its FAC that the Letter was sent out in March and the second amended complaint in the Trade Secret Action was not filed until July 3, 2019. See FAC ¶ 23; Trade Secret Action ECF No., 54. Thus, at the time the Letter was allegedly sent 28G Burst Mode TIAs were part of the "technology at-issue" in the lawsuit. See Letter, 1 cf. Trade Secret Action, Complaint, ECF No. 1, ¶¶ 13, 16, 18, 39.

Having addressed Litrinium's arguments as to specific statements in the Letter, the Court finds that the communications at issue here, specifically the Letter, relates to the Trade Secret Action because the Letter served to provide customers with information pertaining to the lawsuit. The remaining employee statements, as already explained, are also related to the Trade Secret Action although Litrinium in its opposition appears to have conceded these arguments by not addressing them.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

Accordingly, the Court finds that all of Litrinium's claims as stated are barred under the Noerr-Pennington doctrine and the California litigation privilege. As a result, Litrinium has not met its burden of establishing that it would prevail on its claims. The Court does not reach the arguments regarding the sufficiency of the FAC as to the remainder of the claims.

### C. Leave to Amend

At oral argument, Litrinium argued that if given leave to amend it could plead additional facts to show that the Letter was strategically timed and therefore falls within the commercial exemption under anti-SLAPP, and add other statements in connection with the Letter to show that the Letter falls within the sham exception to the Noerr-Pennington doctrine.

Although leave to amend a complaint should be "freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), Litrinium misconceives the nature of an Anti-SLAPP motion and the present posture of the case in light of the Court's granting the motion to strike. An Anti-SLAPP motion is an evidentiary motion not a pleading motion. Once MACOM established the protected nature of its conduct, the burden shifted to Litrinium to come forward with evidence, not allegations, that it was likely to prevail. Metabolife, 264 F.3d at 840 (quoting Wilcox, 27 Cal. App.4th at 823). This it failed to do. Thus, under a classic Rule 15 analysis, the grant of leave would be futile. Ditto v. McCurdy, 510 F.3d 1070, 1079 (9th Cir. 2007); Foman v. Davis, 371 U.S. 178, 182 (1962). It would not cure the evidentiary shortcoming.

Therefore, the Court **DENIES** leave to amend.

### D. Fees

The anti-SLAPP statute provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorneys' fees and costs." Cal. Code Civ. Proc. § 425.16(c). The fee provision applies only to the motion to strike, and not the entire action. S. B. Beach Props. v. Berti, 39 Cal. App. 4th 374, 381 (2006). Here, MACOM has prevailed on its anti-SLAPP motion and is

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1674 JVS(JDEx) | Date | 4/27/20 |
| Title | Litrinium, Inc. v. MACOM Technology Solutions Inc. et al | | |

therefore entitled to fees on its motion. MACOM has asked that the amount of the fee award be reserved for later briefing. Mot., 32. Accordingly, the Court defers granting fees until such briefing takes place.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion and **STRIKES** the FAC with prejudice.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| | Initials of Preparer | lmb |